# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. |
| | : | |
| | : | VIOLATIONS: |
| | : | |
| v. | : | 18 U.S. C. § 201(b)(2)(A) |
| | : | (Receipt of a Bribe by a Public |
| | : | Official) |
| **LUCRETIA B. BARKSDALE,** | : | |
| | : | |
| Defendant. | : | |
| | : | |

## INFORMATION

The United States Attorney informs the Court that:

### Introduction

1. Defendant **LUCRETIA B. BARKSDALE (aka Lucretia Hackney)**, a resident of the Oxen Hill, Maryland, was a Contact Representative with the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA"), Business License Department, from July, 2001 through June 2012 . As a Contact Representative, defendant **LUCRETIA B. BARKSDALE**'s duties and responsibilities included, among other things, reviewing and processing of applications for various permits to assure that all required information was included in the applications. Upon approval of permit applications, defendant **LUCRETIA B. BARKSDALE**'s was required to input pertinent information electronically into the system for issuance of appropriate permits.

2. Individual A, a resident of Washington, D.C., was the owner of a plumbing and heating company located in Washington, D.C., that purportedly specialized in expediting building permits and other critical approvals that impact building construction, renovations and

occupancy. In short, Individual A was a "permit expediter."

3. Individual B, an FBI Confidential Human Source ("CHS"), was introduced to defendant **LUCRETIA B. BARKSDALE** as a contractor who worked on numerous renovation projects in the District of Columbia that required permits and other critical approvals that impact building construction, renovations and occupancy.

### The D.C. Department of Consumer and Regulatory Affairs

4. The DCRA, an agency of the District of Columbia government, located at 1100 4th Street, SW, Washington, DC, was responsible for protecting the health, safety, economic interests, and quality of life of residents, businesses, and visitors in the District of Columbia by issuing licenses and permits, conducting inspections, enforcing building, housing, and safety codes, regulating land use and development, and providing consumer education and advocacy services.

5. District of Columbia regulations required that all property owners obtain building permits from the DCRA for any property improvement projects, interior renovations, remodeling and repairs. A building permit is an authorization to build according to a specific scope of work, including approved plans. Any modification of permit scope or approved plans must be specifically approved. Most property improvement projects required one or more of the following permits: (a) Building Permits; (b) Plumbing Permits (where applicable), (c) Electrical Permits (where applicable), and (d) Mechanical Permits (where applicable). Only licensed D.C. contractors for the specific trade may apply for the heating, electrical and plumbing permits at the DCRA's Permit Center. Also, only the licensed professional contractors and expediters utilize DCRA's Permit Center. Homeowners who are engaged in minor projects utilize the Homeowners Center that was designed to help homeowners get building permits for home

improvement projects such as decks, fences, interior renovations and repairs, and window replacement.

6. Before a permit was issued, the application was reviewed by a DCRA Official with knowledge of the disciplines for which the permit is sought (e.g. electrical, structural). The permits insured that home improvement and construction projects were done safely and properly.

7. In order for the DCRA to process a permit at the Permit Center, the contractors or expediters were required to bring four (4) sets of plans. The plans were required to address all work on the application, including: (a) Existing and proposed architectural plans for all floors, (b) structural details, (c) plumbing details; (d) electrical details, and (e) mechanical details.
If the building was new or the owner was building an exterior addition to the existing building, a DC Surveyor's plat showing the footprint of the proposed new building or addition, with all dimensions was required. All plans were required to be drawn to scale, in ink, on paper no smaller than 11 by 17 inches. Any permit issued became invalid if the authorized work did not start within one year after the permit was issued.

8. Upon arrival at the DCRA's Permit Center, DCRA customers usually stopped to select a ticket to be assisted in the order in which they arrived. Thereafter, the completed permit applications were filled out, then a plans review coordinator and/or a field inspector carefully inspected and reviewed the proposed plans and work descriptions for compliance with D.C. Government codes and regulations. The permit review process was often tedious and time-consuming.

### Receipt of Payments from Individual A

9. From in or about August 2010 through in or about June 2012, in a continuing course of conduct, defendant **LUCRETIA B. BARKSDALE**, routinely demanded and accepted

United States currency ranging from $20.00 to $500, from Individual A, which defendant **LUCRETIA B. BARKSDALE** kept and used for her personal benefit. In return, defendant **LUCRETIA B. BARKSDALE** utilized her assigned DCRA computer to process Individual A's permit applications and issued the requested permits without Individual A having to follow normal DCRA procedures. Unlike other DCRA customers, Individual A did not have to select a ticket to be assisted in the order in which Individual A arrived. Individual A merely dropped off the completed permit applications with defendant **LUCRETIA B. BARKSDALE** and returned to pick up the processed permits at Individual A's convenience. The cash payment that defendant **LUCRETIA B. BARKSDALE** demanded from Individual A depended upon the number of permit applications that she had to process and the number of permits that she had to issue.

### Receipt of Payments from Individual B

10.     From in or about April 2012 through in or about May 2012, in a continuing course of conduct, defendant **LUCRETIA B. BARKSDALE**, routinely demanded and accepted United States currency ranging from $300 to $600, from Individual B, which defendant **LUCRETIA B. BARKSDALE** kept and used for her personal benefit. In return, defendant **LUCRETIA B. BARKSDALE** utilized her assigned DCRA computer to process Individual B's permit applications and issued the requested permits without Individual B having to follow normal DCRA procedures. Unlike other DCRA customers, Individual B did not have to select a ticket to be assisted in the order in which Individual B arrived. Individual B merely dropped off the completed permit applications with defendant **LUCRETIA B. BARKSDALE** and returned to pick up the processed permits at Individual A's convenience.

11.     On or about April 20, 2012, defendant **LUCRETIA B. BARKSDALE**

telephoned and submitted text messages to Individual B and arranged to meet at her office at the DCRA to facilitate the issuance of two construction permits. Later that afternoon, defendant **LUCRETIA B. BARKSDALE** met with Individual B at her workstation at DCRA and issued one Air Conditioning (A/C) Permit and one Electrical Permit to Individual A. In exchange, defendant **LUCRETIA B. BARKSDALE** demanded a $600 payment from Individual B. Individual B issued a check in the amount of $600 to defendant **LUCRETIA B. BARKSDALE**. Unbeknownst to defendant **LUCRETIA B. BARKSDALE**, Individual B had secretly recorded their conversations. During the same interaction, defendant **LUCRETIA B. HACKNEY** quoted Individual B a future price of $800 for four additional construction permits. After some haggling, defendant **LUCRETIA B. BARKSDALE** subsequently lowered her price demand to $750. Defendant **LUCRETIA B. BARKSDALE** used hand gestures while quoting the price and also wrote "800.00" and "750.00" on a piece of paper which Individual B later turned over to the FBI along with the construction permits that had been issued to Individual B by defendant **LUCRETIA B. BARKSDALE**. That same evening, camera footage and financial records reflect that defendant **LUCRETIA B. BARKSDALE** cashed the check that Individual B had given her in exchange for the issuance of two DCRA construction permits.

12. On or about May 10, 2012, defendant **LUCRETIA B. BARKSDALE** met with Individual B at her workstation at DCRA. Defendant **LUCRETIA B. BARKSDALE** issued one (1) DCRA Air Conditioning (A/C) Permit to Individual B. In exchange, defendant **LUCRETIA B. BARKSDALE** demanded $300. Individual B then issued, and defendant **LUCRETIA B. BARKSDALE** accepted a check from Individual B in the amount of $300. Unbeknownst to defendant **LUCRETIA B. BARKSDALE**, Individual B had secretly recorded their interactions.

## COUNT ONE
### (Receipt of a Bribe by a Public Official)

13. Paragraphs one through twelve are re-alleged and incorporated by reference as if fully set forth herein.

14. Beginning in or about April 2012 through in or about May 2012, in a continuing course of conduct in the District of Columbia and elsewhere, the defendant, **LUCRETIA B. BARKSDALE**, being a public official, to wit, a Contact Representative with the DCRA, directly and indirectly, corruptly demanded, sought, received, accepted, and agreed to receive and accept things of value personally, to wit, cash payments ranging from $300 to $600 from Individual B, in return for being influenced in the performance of an official act, to wit, issuing DCRA permits to Individual B.

(Receipt of a Bribe by a Public Official, in Violation of Title 18, United States Code, Section 201(b)(2)(A))

CHANNING D. PHILLIPS
United States Attorney

By: _____
Lionel A. André (D.C. Bar No. 422534)
Michelle N. Bradford (D.C. Bar 491910)
Assistant United States Attorneys
Fraud and Public Corruption Section
555 4th Street, N.W.
Washington, D.C. 20530
202.252.7818 (Andre)
202.252.7803 (Bradford)

DATED: March 10, 2016